**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TRIKELL PAYNE, Plaintiff, | : | |
| v. | : | 3:25-CV-1209 (SFR) |
| BRYAN COLLETTI, Defendant. | : | |

**MEMORANDUM & ORDER**

Plaintiff Trikell Payne, who is proceeding *pro se*, filed this action in Connecticut Superior Court against Defendant Bryan Colletti, seeking a civil protection order requiring that Colletti "not assault, threaten, harass, follow, interfere with, or stalk" Payne; stay away from Payne's home; not contact Payne at his home or their mutual workplace; and to stay 100 yards away from Payne. App. for Civil Protection Order 5, ECF No. 1-1 ("App."). Payne and Colletti are both employees of the United States Postal Service ("USPS"). The United States (the "Government"), on behalf of Colletti, timely removed the matter to federal court. Not. of Rem., ECF No. 1. Pending before the court is the Government's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 13. For the reasons set forth below, the Motion is granted as to Payne's request for injunctive relief prohibiting Colletti from contacting Payne at work. The Motion is denied as to any claims regarding contact outside the workplace, and any such claims are remanded to the Connecticut Superior Court.

# I. BACKGROUND

## A. Factual Background

The following factual background is based on Payne's Application for Civil Protection Order, originally filed in state court, as well as declarations and affidavits submitted by the parties.

Payne's Application for Civil Protection Order asserts that Payne filed an EEO case against Colletti in 2023 while Colletti was his supervisor. App. 6. Payne accuses Colletti of harassing, threatening, and trying to kick him after Payne filed the EEO case. *Id.* The Application also asserts that after Colletti relocated to a different post office, Colletti twice threatened Payne upon meeting him at a different USPS office. *Id.*

Payne and Colletti are both employed by the United States Postal Service. Payne is a custodian at the U.S. Post Office in Storrs, Connecticut. Declaration of Maria Kresmery ¶ 3, ECF No. 13-2 ("Kresmery Decl."); Declaration of Bryan Colletti ¶ 3, ECF No. 13-3 ("Colletti Decl.").

In 2023, Colletti supervised Payne while on detail assignment as the Officer in Charge of the Storrs Post Office. Colletti Decl. ¶ 4. Colletti states that during that detail, he "disciplined Payne for significant performance and attendance-related deficiencies." *Id.* ¶ 6. Afterward, Payne filed "several grievances and EEO claims against" Colletti, alleging that Colletti's "decisions were motivated by racism." *Id.* The claims "were never substantiated." *Id.* Colletti completed his detail at the Storr Post Office that same year in 2023.[1]

[1] Colletti states in his declaration that he completed his detail at the Storrs Post Office "in approximately 2022 or 2023." Colletti Decl. ¶ 7. Given that he states elsewhere in the same declaration that he supervised Payne at that same office in 2023, and Payne states in his Affidavit

Payne states in an affidavit that during Colletti's detail at the Storrs Post Office in 2023, Colletti was his "supervisor," and Colletti "made several attempts to physically harm" him. App. 6. During that time, Payne "filed an EEO case against" Colletti, after which Colletti "began to harass [Payne]," "a supervisor for not fabricating lie against [Payne]," and Payne's "coworker for being a witness in [Payne's] EEO case." *Id.* Payne further contends that Colletti "has several times [come] up to [Payne] about his many guns to intimidate [Payne]," and had "attempt[ed] to kick [Payne] in [Payne's] back when bending down" after failing to write Payne up. *Id.* Payne states that he saw Colletti in January and April of 2025 at another office, and on those occasions Colletti threatened to "come back to [Payne's] office" and "beat [his] ass" and "fuck [him] up." *Id.*

Colletti states that he had no reason to be at the Storrs Post Office following the conclusion of his detail. Colletti Decl. ¶ 8. In June 2025, Colletti was selected to serve as the Postmaster for the Storrs Post Office. Kresmery Decl. ¶ 8; Colletti Decl. ¶ 9. As of August 13, 2025, Colletti had yet to begin his role as Postmaster for the Storrs Post Office. Colletti Decl. ¶ 9.

**B. Procedural History**

Payne filed an Application for Civil Protection Order against Colletti in Connecticut Superior Court on July 18, 2025. App. 5. The Application seeks an order requiring that Colletti "not assault, threaten, harass, follow, interfere with, or stalk" Payne; stay away from Payne's home; not contact Payne at his home or their mutual workplace; and to stay 100 yards away

---

that Colletti "made several attempts to physically harm" him in 2023, I conclude that Colletti concluded his detail at the Storrs Post Office in 2023. App. 6; Colletti Decl. ¶ 4.

from Payne. *Id.* In Payne's affidavit in support of his application, Payne contends that he is "afraid for [his] safety" given that Colletti is applying to work at the same office. App. 6. A hearing on the application was scheduled for August 1, 2025. *Id.* at 4.

The Government, on behalf of Colletti, timely and properly removed the case to federal court on July 30, 2025, pursuant to federal officer removal under 28 U.S.C. § 1442(a)(1). Not. of Rem. On September 5, 2025, the Government moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Def.'s Mem., ECF No. 13-1. Payne opposes the motion and filed the operative opposition on September 25, 2025. Pl.'s Mem., ECF No. 21. The Government filed a reply in support of its motion to dismiss on September 30, 2025. Def.'s Reply, ECF No. 22.

On the same day the Government filed its motion to dismiss, the Government also filed a motion to stay discovery. ECF No. 15. Over Payne's objection, ECF No. 24, I granted the motion to stay discovery pending resolution of the Government's motion to dismiss, ECF No. 25.

## II. LEGAL STANDARD

A district court must grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (citation modified). When considering a motion to dismiss for lack of subject matter jurisdiction, the Court "must accept as true all material

factual allegations in the complaint." *Blecher v. Holy See*, 146 F.4th 206, 216 (2d Cir. 2025) (citation modified).[2]

Payne is proceeding *pro se* in this litigation. "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Consistent with this duty, the "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation modified).

## III. DISCUSSION

The Government asserts that this Court does not have subject matter jurisdiction over Payne's action because sovereign immunity has not been waived. Def.'s Mem. 6-9. Payne argues that Colletti is not protected by sovereign immunity, as sovereign immunity "does not shield individual federal officers acting outside lawful authority." Pl.'s Mem. 2.

For the reasons set forth below, I conclude that this Court lacks subject-matter jurisdiction to the extent the Application seeks an order that would prevent Colletti from performing his duties at the Post Office.

As an initial matter, although Payne does not challenge the removal of this action, I note that removal was proper under 28 U.S.C. § 1442(a)(1), which allows federal officers, or those "acting under" any "agency" or "officer" of the United States, to remove to federal court

[2] There may be some tension in prior decisions from the Second Circuit analyzing when it is appropriate to draw inferences in favor of the pleader on a Rule 12(b)(1) motion to dismiss. *See Agyapomaa v. Mayorkas*, 680 F. Supp. 3d 141, 147 n.2 (D. Conn. 2023) (collecting cases). In this ruling, I accept as true the allegations in Payne's Application and draw all reasonable inferences in favor of Payne. *See id.*

suits brought against them in state court when they were acting "in an official or individual capacity, for or relating to any act under color of such office." As a postal worker, Colletti acted as an "officer" of the United States and the dispute underlying the action is "closely connected with the performance of [his] official functions." *Hendy v. Bello*, 555 F. App'x 224, 226 (4th Cir. 2014) (citation modified). Moreover, Colletti has asserted the colorable federal defense of sovereign immunity. *See id.*; Not. of Rem. 3.

Under the derivative jurisdiction doctrine, my inquiry as to subject-matter jurisdiction focuses on whether the state court had subject-matter jurisdiction over the action against Colletti. *See Kennedy v. Paul*, No. 3:12-CV-01491 (VLB), 2013 WL 5435183, at *2 (D. Conn. Sept. 30, 2013) ("Under the doctrine of derivative jurisdiction, the federal court's jurisdiction over a case that has been removed is derived from the jurisdiction of the state court from which the action has been removed.").

**A. Colletti is Entitled to Sovereign Immunity**

The Government argues that although Payne "did not expressly name the Government as a party in his state court action," the action is nevertheless against the United States, as "the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Def.'s Mem. 6 (citation modified). The Government further asserts that "it is uncontested that the allegations contained within the state court action occurred at the 'office' and entirely in the context of supervisor-subordinate interactions," and that the "alleged harassment began after Plaintiff filed an EEO complaint." *Id.* at 8. Payne's opposition may be read to argue that the action is not against the Government, but rather against Colletti as an individual, because the action "does not interfere with USPS operations," is "narrowly tailored to protect Plaintiff's safety," and is "not to control USPS employment matters." Pl.'s Mem. 2.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471,475 (1994). When the Government is sued, "[t]he waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction" even though "the issues of subject-matter jurisdiction and sovereign immunity are [] wholly distinct." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 139 (2d Cir. 1999) (citation modified).

"[O]fficers acting within their authority generally receive sovereign immunity because an action against a government official for using the authority of a government office is actually a suit against the official's office." *Chambers v. Reid*, No. CV TDC-19-0137, 2019 WL 1992348, at *2 (D. Md. May 6, 2019) (citation modified). A lawsuit is "a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (citation modified).

Here, all of Payne's allegations regarding Colletti's misconduct occurred in connection with the workplace. Payne's Application for a Protection Order asserts that Payne filed an EEO case against Colletti in 2023 while Colletti was his supervisor. App. 6. Payne accuses Colletti of harassing, threatening, and trying to kick him after Payne filed the EEO case. *Id.* The Application also asserts that after Colletti concluded his detail at the Storrs Post Office, Colletti twice threatened Payne when the two met at a different post office. *Id.* The allegations in Payne's affidavit are consistent with the alleged conduct occurring at U.S. Post Offices.

Thus, the allegations of past incidents occurred in relation to employment for the USPS. Moreover, some of the relief that Payne seeks would "interfere with public administration" at

the Storrs Post Office. *See Dugan*, 372 U.S. at 620. In particular, he requests that Colletti not "contact" him at his place of work and that Colletti "stay 100 yards" away from him. App. 5. Given that Payne and Colletti share a workplace—the Storrs Post Office—such requirements would prevent Colletti, the Postmaster, from contacting an employee, Payne, and significantly impair Colletti's movements around the post office. Given the nature of their positions, these requirements are especially inhibitory. As a custodian, Payne's position requires him to move around the building. As Postmaster, Colletti is responsible for the entire post office. A civil protection order that requires Colletti to stay away from Payne at all times, while Payne moves around the building, and without the ability to contact Payne remotely, is unworkable without significant impairments on the work of the post office, or significant government expenditures to create an environment in which the two parties are always a lawful distance apart. Therefore, to the extent this action seeks an injunction relating to contact between the two men at the post office or related to the employee-supervisor relationship, the action must be construed as an action against the United States and Colletti is entitled to sovereign immunity.

**B. Sovereign Immunity Has Not Been Waived**

Here, because the Government is protected by sovereign immunity, Payne's action must be dismissed unless there has been a waiver of sovereign immunity. Federal sovereign immunity "must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citation modified). Payne has failed to present any authority indicating a waiver of sovereign immunity here.

"Federal courts regularly dismiss removed state court petitions for restraining orders or peace orders filed by federal employees when such petitions are based on alleged misconduct in the workplace and seek to restrain the conduct of a co-worker at a federal office." *Chambers*, 2019 WL 1992348, at *3. As courts have recognized, "[t]here is no indication that any law passed by Congress waived the USPS' sovereign immunity to allow a state court to issue a civil protection order that restricts a USPS employee's activity in the workplace." *Hargrave v. Hollyfield*, No. 21-CV-266, 2022 WL 1174988, at *2 (S.D. Ohio Apr. 20, 2022); *see also Hendy*, 555 F. App'x at 226 (dismissing on sovereign immunity grounds a petition for a peace order filed in Maryland state court by a postal worker who sought to restrain her supervisor from contacting her or going to their workplace); *Gilmore v. Kernan*, No. CV 24-1438, 2025 WL 2105561, at *2-3 (E.D. La. July 28, 2025) (dismissing on sovereign immunity grounds a petition for a restraining order filed in Louisiana state court by a postal worker who sought to restrain her supervisor from going to their workplace).

In cases involving similar circumstances to the present case, federal courts have concluded that neither the Federal Torts Claim Act ("FTCA") nor the Post Reorganization Act of 1970 ("PRA") waive sovereign immunity. *See Gilmore*, 2025 WL 2105561, at *2-3. Although the FTCA waives sovereign immunity "for tortious acts of federal employees working with the scope of their federal employment," it does so only in "suits seeking money damages." *Id.* at *3. The PRA allows the USPS to "sue and be sued in its official name" but not "(1) for types of suits that are not consistent with the statutory or constitutional scheme; (2) when necessary to avoid grave interference with the performance of a governmental function; or (3) for other reasons that demonstrate congressional intent to apply the sue and be sued clause narrowly." *Hendy*, 555 F. App'x at 226 (citation modified).

Consistent with the Fourth Circuit, I conclude that the PRA does not waive sovereign immunity where a postal employee seeks an injunction prohibiting contact at work with another employee. *See id.* ("The first two exceptions apply here: Hendy seeks a state-law injunction that would prohibit a supervisor at the Westlake Post Office from coming to her federal workplace. It is inconsistent with the principle of federal supremacy to allow such interference with the performance of a federal employee's duties. Moreover, in prohibiting a federal employee from entering her federal workplace, waiving sovereign immunity would disturb the federal agency's internal functions. This could not have been Congress's intent."). As discussed, the relief requested by Payne would significantly impede the work of the USPS at the Storrs Post Office.

Accordingly, to the extent Payne's Application for a Protection Order seeks to restrain Colletti from contacting Payne at the Storrs Post Office or otherwise contacting him in connection with the workplace, the Application is dismissed on sovereign immunity grounds. *See Chambers*, 2019 WL 1992348, at *3. Congress has provided alternative mechanisms through which Payne may seek relief from any anticipated workplace harassment from Colletti. In particular, Payne may seek relief under Title VII, 42 U.S.C. § 2000e *et seq*., and appears to be currently doing so. Pl.'s Mem. 2; *see Chambers*, 2019 WL 1992348, at *3 (stating that to the extent postal employee seeks relief from alleged misconduct by former supervisor, "her remedy lies with the federal EEO process that she has already initiated through the filing of a complaint that is now before the U.S. Equal Employment Opportunity Commission").[3]

[3] "There are two recognized exceptions to the principle that sovereign immunity bars a suit against a government employee: 1) when an employee's actions exceed the scope of the statutory powers conferred upon him or her; and 2) when, despite acting within the scope of his or her authority, the

Payne's Application does not allege that Colletti has attempted to contact, stalk, or harass Payne outside the workplace. Nonetheless, the Application seeks an order requiring that Colletti stay away from Payne's home, not contact him at his home, and "not assault, threaten, harass, follow, interfere with, or stalk" him in any location. To the extent the Application "can be construed as seeking to address conduct outside the workplace . . . such claims would not reasonably be construed as claims against [Colletti] in [his] capacity as a federal employee and thus would not implicate sovereign immunity." *Chambers*, 2019 WL 1992348, at *3; *see also Figueroa v. Baca*, No. EDCV171471PAAGRX, 2018 WL 2041383, at *3 (C.D. Cal. Apr. 30, 2018) ("To the extent that the Restraining Order contains provisions applying outside the federal workplace, such provisions could not reasonably be construed to apply against Baca in his capacity as a federal employee, and thus do not implicate sovereign immunity or the Supremacy Clause.").

employee was acting unconstitutionally." *F.B.I. v. Superior Ct. of Cal.*, 507 F. Supp. 2d 1082, 1094 (N.D. Cal. 2007) (citing *Dugan*, 372 U.S. at 621-22). Here, despite Payne's allegations that Colletti engaged in misconduct, Payne's allegations do not satisfy either exception. *See* Erwin Chemerinsky, *Federal Jurisdiction* 629 (9th ed. 2025) ("[I]f the officer is acting with the terms of his or her statutory authority, and the action is not alleged to be unconstitutional, then no injunction is permitted, even though the conduct is tortious."). I note that Congress amended the Administrative Procedure Act to waive sovereign immunity in suits requesting relief other than damages, at least in some circumstances. *See Sabir v. Williams*, No. 3:17-CV-749 (VAB), 2017 WL 6514694, at *2 (D. Conn. Dec. 19, 2017) (stating in a case asserting claims of violations of federal law that "[t]he APA waives the sovereign immunity of the United States for claims against federal officers that seek non-monetary relief"); *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 118-19 (D. Conn. 2010) (discussing limits of APA waiver). However, the APA waiver applies only with respect to actions brought in federal court and does not waive immunity in state court actions. *See* Chemerinsky 629 n.37 ("[W]hile immunity was abolished in the federal courts, the United States still cannot be found liable in any state court action.") (citation modified).

I therefore remand any such remaining claims regarding contact outside of the workplace to the state court. *See Chambers*, 2019 WL 1992348, at *4 (granting motion to dismiss as to "Chambers's request for injunctive relief prohibiting Reid from contacting Chambers at work," denying motion to dismiss "as to any claims regarding contact outside the workplace," and "remanding any claims regarding contact outside the workplace"); *Figueroa*, 2018 WL 2041383, at *3 (concluding that "the state court lacked jurisdiction to impose the terms of the Restraining Order to the extent that they impair the performance of federal duties" and remanding "remaining claims to San Bernardino County Superior Court"); *see also Haynie v. Bredenkamp*, No. 4:16-cv-773 (CEJ), 2016 WL 3653957, at *1 (E.D. Mo. July 8, 2016) (remanding claims arising from conduct outside the USPS workplace).

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that: the Government's Motion to Dismiss, ECF No. 13, is GRANTED in part and DENIED in part. The Motion is granted as to Payne's request for injunctive relief prohibiting Colletti from contacting Payne at work. The Motion is denied as to any claims regarding contact outside the workplace. The Clerk shall REMAND any claims regarding contact outside the workplace to Connecticut Superior Court, Judicial District of Hartford, No. HHD-CV25-5089709-S and close this case.

**SO ORDERED.**

New Haven, Connecticut
September 30, 2026

*/s/Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge